UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
JENNA BICKELMANN and SPEZI LLC,           :
                                          :
                                          :   1:19-cv-4653
            Plaintiffs,                    :
                                          :  COMPLAINT
        vs.                               :
                                          :
SAMUEL KLEIN, VISUAL GROUP LLC,           :  JURY DEMANDED
ETOURDISSANT LLC, GARY S. KLEIN           :
and JOHN P. TESEI,                        :
                                          :
            Defendants.                   :
———————————————————————

## COMPLAINT

Plaintiffs Jenna Bickelmann ("Bickelmann") and Spezi LLC ("Spezi"), for their

Complaint against Defendants Samuel Klein ("Klein"), Visual Global LLC ("Visual"),

Etourdissant LLC ("Etourdissant"), Gary S. Klein ("Gary") and John P. Tesei ("Tesei")

allege as follows:

### NATURE OF PROCEEDING AND RELIEF SOUGHT

1.      This is an action for securities fraud that is, for violations of Section 12 of

the Securities Act of 1933, 15 U.S.C. § 78l, and of Section 10(b) of the Exchange Act of

1934, 15 U.S.C. § 78j(b) and Rule 10b-5, thereunder 17 C.F.R. § 240.10b-5, aiding and

abetting under Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e) as well as for

common law fraud in the inducement and misrepresentation, for breach of fiduciary duty

and for aiding and abetting under New York law.

2.    Plaintiff seeks to recover compensatory damages in the principal sum of Two Hundred Fifty Thousand and Ten Dollars ($250,010.00), together with prejudgment interest, attorneys' fees provided by applicable law, the costs and disbursements of this action, punitive damages at common law and such further relief that the Court may deem just and proper in the circumstances.

3.    In connection with the activities of the Defendants described below, Defendants utilized and employed the means and instrumentalities of interstate commerce, including internet, telephone, and other means of communications. Acts, transactions and omissions constituting violations of the 1933 Act and the 1934 Act occurred within the Southern District of New York.

## SUMMARY

4.    This case involves a series of false and misleading statements and misrepresentations made by Samuel Klein, regarding distressed debt related to real property mortgages ("fraudulent investment") to an unsophisticated investor, Plaintiffs Jenna Bickelmann and Spezi LLC.

5.    In August 2018, Samuel Klein engaged in securities fraud by soliciting investments to deposit directly into Visual Group LLC based upon his representations to Plaintiffs that he would use the money to purchase distressed debt related to real property mortgages. In August, 2018, Klein solicited $250,010 from Plaintiff for his personal use to sustain his lavish lifestyle.

6.    Plaintiff Bickelmann is a resident of New York, New York and former acquaintance of Defendant Klein.

7.      Defendant Klein knew or was reckless in not knowing that his statements to Plaintiffs regarding the fraudulent investments were false and misleading because he did not have an adequate basis in fact for his assertions. When Defendant Klein made misstatements to Plaintiffs, he knew he had no intention of purchasing any distressed debt related to real property mortgages on Plaintiffs' behalf but to only spend the money on himself personally to maintain his lifestyle. During investigation, Salvatore Cannata, Principal Financial Examiner, Securities and Business Investments Division with the State of Connecticut Department of Banking, confirmed to Plaintiff that Defendant Klein did not use Plaintiffs' money for its intended and promised investment purposes.

8.      Defendant Klein knew he was in immense debt due to IRS liens of approximately $1.5m and had an outstanding judgment against him so ordered by Chancellor Bouchard of the Delaware Chancery Court in the amount of $433,000 plus pre- and post-judgment interest. Defendant Klein's statements and omissions created the misleading impression that he was a successful businessman intending to invest Plaintiffs' money to earn Plaintiff Bickelmann a return.

9.      Defendant Klein's false statements and omissions caused significant harm to Plaintiffs by almost entirely wiping out Plaintiff Bickelmann's life savings.

10.     By engaging in the conduct alleged in the Complaint, Defendants violated Section 12 of the Securities Act of 1933, 15 U.S.C. § 78l, and of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, thereunder 17 C.F.R. § 240.10b-5, aiding and abetting under Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e) as well as New York common law for fraud in the inducement and misrepresentation, for breach of fiduciary duty and aiding and abetting.

## JURISDICTION AND VENUE

11.     The jurisdiction of this Court over the within action rests upon 28 U.S.

Code § 1332, in that the complaint in this action asserts violations of the laws of the

United States, specifically of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (the

"1933 Act"), and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* (the

"1934 Act"). The jurisdiction of this Court over the common law claims asserted in the

complaint in this action rests upon 28 U.S.C. § 1367, in that such claims fall within the

supplemental jurisdiction of this Court.

12.     Venue in this district is proper under Section 20(b) of the 1933 Act,

15 U.S.C.§ 77a *et seq.* and Section 27 of the 1934 Act, 15 U.S.C. § 78a. Certain of the

sales of securities and acts, practices, transactions, and courses of business constituting

the violations alleged in this Complaint occurred within the Southern District of New

York, and were effected directly, or indirectly, by making use of the means, instruments

and instrumentalities of transportation or communication in interstate commerce, or of

the mails, or the facilities of national securities exchanges. Plaintiffs reside within this

District and purchased the fraudulent security while in this District.

## PLAINTIFF

13.     **Plaintiff Jenna Bickelmann** is an individual residing at 75 Perry Street,

New York, New York 10014. Plaintiff Spezi, LLC is a privately held limited liability

company managed by Plaintiff Jenna Bickelmann located at 75 Perry Street, New York,

New York 10014.

14.     Each of the Plaintiffs were sold distressed debt relating to real property

mortgages from Defendants as fully detailed below.

4

## DEFENDANTS

15.     **Defendant Samuel Klein**, age 63, is a resident of Greenwich,

Connecticut. Defendant Klein does not have a college degree but has a background in

real estate and commercial property development and portrays himself as a sophisticated

and wealthy businessman.

16.     Defendant Klein is a member and agent of a luxury care storage facility,

Etourdissant LLC in Greenwich, Connecticut. He also is the current Chief Executive

Officer of Oakwood Realty Corp. and Chairman of the Board of Fairchild Realty Group,

Ltd. located in New York, New York. Defendant Klein was the managing member of KF

Pecksland LLC organized in Delaware and having its principal place of business in

Greenwich, Connecticut. Defendant Klein is the former owner of Briar Crest Nursing

Hmoe, Inc., which conducted business as Chandler Care Center, in Ossining, New York,

which has since ceased operations due to criminal charges brought against Defendant

Klein and the facility in 2002. Defendant Klein was also the founder and former chief

business development officer of The Bleachers Corporation, a Delaware corporation,

which has since become defunct.

17.     **Defendant Etourdissant LLC**, incorporated in 2017, is a luxury car

storage facility located at 222 Byram Road Greenwich, Connecticut. Defendant Klein is

the member and agent of Etourdissant LLC, located in Greenwich, Connecticut.

18.     **Defendant Gary Klein** is the brother and business partner of Defendant

Samuel Klein as well as a practicing attorney barred in the State of Connecticut.

Defendant Gary is a partner at the law firm Carmody Torrance Sandak & Hennessey LLP

located in Stamford, Connecticut. Defendant Gary is a trial lawyer practicing over 27

years focusing on commercial, environmental and real estate litigation, specifically

business disputes, including cases involving business valuation, lender liability, business

torts and covenants not to compete. Defendant Gary also has significant experience in

complicated ADR proceedings including multi-party and international business

arbitrations in the commercial, financial and securities fields.

19.     **Defendant John P. Tesei** is a practicing attorney barred in the State of

Connecticut. Defendant Tesei, of Gilbride, Tusa, Last & Spellane LLC, focuses his

practice in the areas of land use, commercial real estate and aviation law. Defendant

Tesei's firm website touts Tesei over the last 30 years has "provide[d] legal services to

diverse local, national and international clientele that collectively own billions of dollars

of commercial and real property throughout the United States and the world."[1]

### FACTS

20.     Defendant Klein is an entrepreneur who holds himself out as having

achieved enormous financial success in his career. According to Defendant Klein, he

amassed a fortune of at least $10 million early in his career by having sold a company he

developed to Staples, Inc. He claims to have multiplied that small fortune into an even

larger one by investing in undervalued and distress real estate in New York City. Klein

resides at 131 Pecksland Road, Greenwich, Connecticut, in a 7,691-square foot residence

located on a 3.8 acres in a prime estate are of Greenwich. Defendant Klein is the singular

member of Defendant Visual Group LLC, a domestic limited liability company located at

58 East Main Street Plainville, Connecticut. Defendant Visual Group LLC was registered

with the State of Connecticut on November 28, 2017.

---

[1] http://www.gtlslaw.com/professionals/john-p-tesei

21.     Defendant Klein has had varied interests and pursues varied activities but his principal activity appeared to have been convincing Plaintiff Bickelmann how wealthy and successful he was. As hereafter detailed, he did this to fraudulently induce her to purchase distressed debt relating to real property mortgages. Plaintiff Bickelmann had knowledge and reasonable belief the money she invested with Defendant Klein for such purchases was used for other purposes besides those promised and represented by Defendant Klein.

22.     On April 7, 2018, Plaintiff Jenna Bickelmann met Defendant Klein, and they had dinner at the Waverly Inn in downtown Manhattan. Klein boasted to Plaintiff he maintained his own wine collection within the exclusive high end restaurant, he owned a villa in St. Barth's and a mansion in Jackson Hole, Wyoming. During the dinner, Defendant Klein invited Plaintiff Bickelmann to his Greenwich, Connecticut residence to view his expensive art collection. Defendant Klein drove Plaintiff to his Greenwich residence in his custom made Ferrari automobile. Defendant Klein continued to impress upon Plaintiff how successful he was by mentioning the lime tree groves on his property that he planted every spring and removed in the fall. He went on about various jazz parties he hosted at his home with numerous celebrities in attendance.

23.     While in Nashville, Tennessee for Plaintiff Bickelmann's birthday in May, 2018, Defendant Klein referred her to the National Underground bar and his good friend Joey DeGraw, brother of famed Country music singer, Gavin DeGraw. Joey DeGraw vouched for Klein stating they had been friends for 20 years, and he was a "great guy." Joey explained Defendant Klein had hired Gavin DeGraw to perform at his daughter's

bat mitzvah and then flying both DeGraw brothers on Klein's private jet to his residence in Jackson Hole, Wyoming.

24.     On August 5, 2018, while at his Greenwich residence, Defendant Klein explained to Plaintiff Bickelmann he is a very successful real estate investor, and he has amassed his fortune investing in real estate distressed debt. He explained he has exclusive access to particular deals due to the longevity of his career and the deep relationships he has cultivated over the years. Defendant Klein then represented to Plaintiff Bickelmann he had exclusive access to lucrative opportunities to invest in distressed debt to which he represented he had proprietary access due to his business relationships.

25.     Defendant Klein mentioned to Plaintiff Bickelmann another female investor who had given him $175,000 and requested to invest more funds at a later date, but he had refused her request because he did not want to let that much of the investment go to someone besides himself. He described the investment he offered to Plaintiff as "the opportunity of a lifetime."

26.     Defendant Klein portrayed this offer to invest as if he was doing Plaintiff a favor. Plaintiff Bickelmann told Klein she had *no investing experience*. Plaintiff Bickelmann mentioned possibly investing her money in Fidelity, a very well known brokerage company. However, upon learning of Plaintiff Bickelmann's lack of investing experience, he dissuaded her from considering investing in a firm such as Fidelity because he stated that would be "blue collar."

27.    Defendant Klein stated there was only so much of the investment he wanted to "let go of." He initially told Plaintiff Bickelmann he would only let her invest $150,000 but shortly thereafter stated that because she was a "good egg," he would let her invest $200,000.

28.    On August 5, 2018 while poolside surrounded by extravagant landscaping at Defendant Klein's Greenwich mansion, Klein stated he would "**personally guarantee**" Plaintiff's money back at any time in the event she needed to withdraw the investment because he "never loses" on investments. Therefore, Plaintiff Bickelmann felt reassured her money was safe and relied upon Defendant's representation. Defendant Klein warned Plaintiff that if she needed to withdraw her investment prematurely for any reason, she would not be entitled to a return on her initial investment. However, she would receive "**all**" of her principal investment back upon request.

29.    Before agreeing to invest and multiple times thereafter, Defendant Klein vehemently warned Plaintiff not to speak of the investment to anyone or to mention his name. Defendant stated not to mention the investment because people will become "jealous" of all the money they will be making. Defendant Klein then bragged he "doubles and triples" investments. Klein represented to Plaintiff she would make an exact return of $433,203 on her $200,000 investment by December 15, 2018.

30.    Prior to Plaintiff Bickelmann investing with Defendant Klein, Defendant explained it was imperative for Plaintiff to invest via an LLC and not personally with him. Defendant instructed Plaintiff that if she did not already have an existing LLC in her name that she must form one in order to do business with him. Plaintiff revealed to Defendant Klein she did in fact have Spezi LLC operating in her name. Forward looking,

Defendant Klein insisted on Plaintiff using Spezi LLC to invest in his fraudulent

investment in order to immunize himself from liability under the '33 Act and '34 Act.

31.     On August 6, 2018, Plaintiff Bickelmann wrote a check from her

consulting firm, Spezi LLC in the amount of $200,000 to Defendant Klein's company,

Visual Group LLC. Defendant Klein sent an Uber to pick up the check from Plaintiff's

apartment at 75 Perry Street New York, New York to drive it to him in Greenwich,

Connecticut. Defendant Klein immediately deposited the check on August 6, 2018 in Rye

Brook, New York, and the funds were hastily removed from Plaintiff's account.

32.     On August 8, 2018, Defendant Klein sent Plaintiff Bickelmann an email

confirmation of the investment stating:

> "please allow this email to serve as confirmation of your investment of 200
> hundred thousand dollars US ($200,000) in the purchase and sale of mortgage
> note obligations that are secured by real estate in the State of Connecticut..while
> no investments are guaranteed of their performance, we believe we have deep
> knowledge of the current market and the obligations that are secured with same.
> [O]ur goal is to close this transaction prior to your year end of 2018. [S]incerely,
> sam klein[.]"

Klein signed and dated the bottom of the printed email along with the message, "Keep in

safe place."

33.     For the next few weeks, Plaintiff Bickelmann kept in touch with Klein.

Defendant Klein affirmed to Plaintiff that they together were going to make a lot of

money and were business partners. Each time Plaintiff inquired about the investment's

status, Klein replied, "we're wheeling and dealing, everything is great!" Defendant Klein

touted Plaintiff's return would be made on time if not early.

34.     On August 23, 2018, Defendant Klein telephoned Plaintiff to explain they needed to purchase "title insurance." Klein offered Plaintiff an explanation of both types of insurance and several investment scenarios i.e. if Plaintiff invested X amount, she would get back Y return by September 24, 2018. Defendant Klein represented to Plaintiff if she invested $50,000 on August 23, 2018, she would earn a return of approximately $133,000 by September 24, 2018.[2]

35.     Notwithstanding his knowledge of his perilous personal financial condition, and notwithstanding the fact Defendant Klein had already induced Plaintiff to make one investment (of $200,000) based on material misrepresentations and omissions, Defendant continued to solicit Plaintiff for additional funds, urging her to invest an additional $50,000.

36.     On August 23, 2018, Plaintiff Bickelmann telephoned Defendant Klein to express her hesitation in investing an additional $50,000 as it was too large a sum for her to invest at that time, and she was still awaiting a return on her initial investment. Plaintiff stated she was comfortable investing $19,000, however. Upon hearing Plaintiff's desire to invest $19,000 versus the $50,000 he originally pressured her for, Defendant Klein became very accusatory stating Plaintiff must invest the $50,000 or it would result in costing him exorbitant legal fees and jeopardize her ability to invest in deals with Defendant in the future. Given the Defendant's reaction, on August 24, 2018, Plaintiff made two wire transfers, one from her Chase account in the amount of $27,000 and the

---

[2] According to First American Title™, a quote for the purchase of tile insurance for the cash sale of property valued at $1,000,000 in Greenwich, Connecticut is $3,400, staggeringly less than the $50,000 Defendant Klein represented to Plaintiff Bickelmann. https://facc.firstam.com/Summary

other from her Bank of America account in the amount of $15,000 to wire to Defendant

Klein and Defendant Visual Group LLC, which amounted to $42,000. On August 25,

2018, Plaintiff handed Defendant Klein $8,010 in cash to total an additional investment

of $50,010 for the purpose of purchasing "title insurance," which Defendant represented

was crucial for their dealings.

37.     On August 25, 2018, Defendant Klein invited Plaintiff Bickelmann to go

sailing with his friend and investor of Defendant Etourdissant LLC, Justin Rubenstein

("Rubenstein") and his wife Eleanor Rubenstein. Rubenstein had invested $25,000 in

Etourdissant. One of Etourdissant's employees, Sara, was also present on the boat.

Defendant Klein stressed to Plaintiff how important this meeting was because Rubenstein

was an investor of his, and Plaintiff needed to come across professional if she wanted to

be apart of future deals with the two men. Defendant went so far as to prohibit Plaintiff

from wearing a bathing suit aboard the boat, even though Eleanor Rubenstein was

wearing one. Defendant Klein told Plaintiff this introduction would advance her

professional development.

38.     On August 29, 2018, Defendant Klein emailed Plaintiff Bickelmann a

confirmation of her investment of $50,010 stating, "please allow this email to serve as

confirmation of a $50,010 no cents investment in the mortgage notes we are

buying/trading. [t]his is part of the previous transaction of 2 weeks ago." Rubenstein

vouched for Klein stating he himself invested $25,000 with Defendant Klein in his

company Defendant Etourdissant, and Rubenstein mentioned his personal friend invested

between $500,000 to $1,000,000 with Klein also in Etourdissant. Rubenstein revealed he

was aware Defendant Klein transferred his $25,000 investment into Visual Group LLC

from Etourdissant.

39.     On September 7, 2018, Defendant Klein invited Plaintiff to view a

residential property in Stamford, Connecticut. Defendant Klein informed Plaintiff of his

plans to purchase the home on the property and convert it into an "exclusive day club"

with a DJ. Klein represented to Plaintiff he was teaming up with the Tao Group, well-

known for operating high end restaurants in New York City, such as both Tao locations

in Manhattan. Defendant Klein drew a diagram for Plaintiff illustrating how if she

invested in this venture, she would make millions of dollars, but it would be a long-term

investment. Defendant Klein showed Plaintiff the sales brochure as proof the property

was being sold by John Grunsow of Greenwich Brokerage located at One Pickwick

Plaza, Greenwich, Connecticut. Defendant Klein embellished by stating the seller would

sell the property at a discount to him because he knew Defendant had influence with the

Planning and Zoning Board in Greenwich, Connecticut and could speed up the zoning

approval process.

40.     Upon reviewing the nature of the affluent neighborhood and

understanding basic dynamics of zoning laws, Plaintiff Bickelmann began to question

Defendant Klein's judgment and wonder if he was delusional to seriously propose to

Connecticut's Planning and Zoning Board to convert a waterfront residence on such a

quiet and conservative Greenwich street into a Miami inspired bikini clad day and night

club.

41.     On September 24, 2018, Defendant Klein forwarded Plaintiff Bickelmann
an email chain dated September 21, 2018 regarding Plaintiffs' investment. Defendant
Klein explained the contents of the email chain and real estate agreement via telephone
and then instructed Plaintiff Bickelmann to delete the email chain entirely because he did
not want it "getting into the wrong hands." Defendant Klein sent the email chain to dupe
Plaintiff into thinking it represented her investment of distressed debt. It most certainly
did not. The email conversation concerned the property on Mayfair Lane Defendant
proposed Plaintiff consider investing in, which Defendant Klein already owned and was
encumbered by several liens. This email conversation posing as a legitimate business
transaction took place between Defendant Klein's attorney, Defendant Tesei, Frank
Jordan, business partner of Defendant Klein's and Defendant Gary Klein, the
Defendant's brother as well as Klein himself, who used the email
admin@fairchildrealty.com. Kevin Smith was carbon copied on the correspondence using
the email ksmith@stroock.com.

42.     In the email exchange, Defendant Gary wrote to Defendant Tesei the
"General Terms" of the investment were as follows:

> "Jordan purchases Klein's 1% interest in FJ Petey, LLC for $1.00.
>
> A third party entity purchases the assets of FJ Petey, LLC for $100,000 and
> substitutes itself as Plaintiff in the pending foreclosure.
>
> FJ Petey, LLC and Klein exchange general releases.
>
> Jordan and Klein exchange general releases."

Frank Jordan is Defendant Klein's business partner acting as if in control of FJ Petey,
LLC. Attached in the email was a State of Connecticut Residential Property Condition

Disclosure Report Department of Consumer Protection form and a signature page of an

executed contract. Defendant Klein sent Plaintiff documentation relating to his scheme to

change the ownership of 10 Mayfair Lane to shed it of encumbrances and leapfrog the

IRS and Choice Hotels International, Inc. to avoid paying liens on this property.

Defendant Klein used the email chain as evidence of his straw man dealings with his

business partners and attorney Tesei as a rouse to convince Plaintiff the documentation in

the email chain represented and legitimized her investment of $250,010. Upon Plaintiff

inquiring with Defendant Klein about what FJ Petey was, Defendant Klein conceded, "it

is a straw man."

43.     In the email, Defendant Klein referred to the investment property for

Plaintiff's potential investment as having the address of 10 Mayfield Lane Greenwich,

Connecticut, but in fact, it was actually Defendant Klein's guesthouse and owned by

Defendant.

44.     On September 25, 2018, based upon his previous promise that Plaintiff

Bickelmann could withdraw her money at any time without penalty and without the

return on her investment, Plaintiff requested to rescind her money back. In response,

Defendant Klein became belligerent. He stated if she withdrew her money now, she

would receive "pennies on the dollar."

45.     During the telephone conversation, Defendant Klein begged Plaintiff

invest $55,000 more with him in order to "speed along the process" of getting Plaintiff

her return on the investment. Defendant Klein continued to beg Plaintiff stating that if she

could do him this "favor," he would invest in her company down the road. Plaintiff

ultimately declined to invest further with Defendant Klein despite his pleading. She

became thoroughly disturbed by his desperation for these additional funds, especially

when she had previously told Defendant she invested with him her entire life savings.

Plaintiff's bad feeling regarding Defendant's request, then caused her to wonder why

such an apparently successfully business man in his 60s would be begging a woman in

her 30s for money. This prompted Plaintiff to investigate into Defendant Klein's past and

led to an unearthing of dishonest dealings.

46.     Plaintiff Bickelmann ascertained that in 2002, Attorney General Eliot

Spitzer announced Briar Crest Nursing Home, Inc., which did business as Chandler Care

Center, and its former owner and operator before ceasing operations, Defendant Klein,

plead guilty to charges resulting from their failure to provide an adequate level of skilled

nursing care to patients. The facility pled guilty to the crime of Grand Larceny in the

Second Degree, a Class C felony. The facility ceased operations after a July 2001

Department of Health survey cited it for placing residents in imminent jeopardy. By its

plea, Chandler Care Center admitted that it unlawfully obtained $400,000 from the

Medicaid program by representing that it had provided "adequate" care to its patients.

Defendant Klein pled guilty to the crime of Willful Violation of the Public Health Laws.

Klein admitted that between June 1 and July 31, 2001, he willfully failed to employ the

number of registered nurses or licensed practical nurses needed to assure that each

resident received treatments, medications and other health services in accordance with

their individual care plans. As part of their plea agreement, the facility and Defendant

Klein agreed to pay restitution of $400,000 to the state's Medicaid program prior to

sentencing. The repayment represented Chandler's Care Center total billings to Medicaid

for June and July 2001 for services it knew were deficient.

47.     Plaintiff Bickelmann discovered Defendant Klein was hauled into

Delaware's Chancery Court to face allegations of securities fraud. In a post-trial decision

of the Delaware Chancery Court in *Glick v. KF Pecksland LLC*, the Court found:

> "that Samuel Klein fraudulently induced Tim and Renee Glick into investing most
> of their life savings in a company he used as his personal checking account on the
> promise that they would obtain an ownership interest in another company called
> The Bleachers Corporation. Not long after the Glicks entrusted Klein with their
> savings, Bleachers became defunct. Klein lived lavishly and portrayed himself to
> the Glicks as a highly successful businessman. He perpetuated the fraud by
> befriending the Glicks and gaining their confidence before offering them the
> 'once-in-a-lifetime opportunity' to invest in a 'white hot' Bleachers…To close the
> deal, Klein promised to personally buy back their shares if things did not work
> out."

As the Glicks, Plaintiff is not a sophisticated investor, as was readily apparent to

Defendant Klein.

48.     In complete contradiction to all representations made by Defendant to

Plaintiff Bickelmann, by letter dated July 25, 2018 and as a matter of public record,

Defendant Klein wrote Chancellor Bouchard of the Delaware Chancery Court revealing

his home was in foreclosure and a federal tax lien exists against him in the amount of

$1.5 million. Defendant Klein admits that he has "borrowed" money to pay nominal bills.

This letter was written by Defendant Klein as a plea to the Chancellor to not issue a

capias i.e. bench warrant for his arrest for failure to appear before the Chancery Court in

the matter of *Glick v. KF Pecksland, LLC, the Bleachers Corp. and Sam Klein* Case No.

12624-CB. Defendant Klein hand wrote in the bottom left corner of the typed letter, "Had

I had funds to settle this prior to Court – I would have done so your Honor – the

reputational damage suffered was and is catastrophic." Defendant Klein signed the letter

swearing his statements were accurate. This letter was written merely 10 days after

representing to Plaintiff Bickelmann he was thriving financially – simply untrue.

49.     Next, Plaintiff Bickelmann came across Jodi Jones' ("Jones") lawsuit

brought against a company Defendant Klein persuaded her, family and friends to invest

in. Jones invested $718,000 with Defendant Klein through purchasing fraudulently sold

shares of The Bleachers Corporation, described to Jones by Defendant Klein as "the

Billion Dollar Company." The Bleachers Corporation was founded in 2010 as a digital

media company specializing in live event HD production and streaming for independent

and private school markets, sports leagues, sports venues, and other organizations,

distributing and managing their sports, music, academic and special event content, live

and on-demand. Klein, the founder, was initially the owner of 100% of the stock of the

corporation. In the matter of *Jodi Ann Jones, et al. v. The Bleachers Corporation* Case

1:17-cv-01941, Jones, family and a friends brought suit against Defendant Klein and The

Bleachers Corporation along with its directors and officers for securities fraud, common

law fraud and misrepresentation, breach of fiduciary duty and breach of corporate

officers and directors of care and loyalty seeking $718,000 in compensatory damages

together with applicable prejudgment interest, attorneys' fees, the costs and

disbursements of the action and punitive damages at common law.

50.     Further investigation by Plaintiff uncovered an action brought in

Westchester County by HLC Series Investments, LLC ("HLC") against Defendant Klein,

individually and as manager of KF Pecksland LLC and KF Pecksland LLC on August 4,

2018 for fraudulently inducing HLC and its members into investing $500,000 in KF

Pecksland to acquire stock in a bogus start-up company, The Bleachers Corporation. The

complaint accuses Defendant Klein of misappropriating the $500,000 for his own

personal use. Indeed, while testifying during the *Glick* trial, Defendant Klein

unequivocally admitted *under oath* that he improperly used KF Pecksland as his "***personal checking account***." (*See* HLC Complaint Exhibit 1, p. 4).

51.     On December 12, 2017, Defendant Klein employed Daniel Ayzenberg CPA, Ayzenberg CPA, PLLC to compose a Compilation Report detailing the financial condition and assets and liabilities of Defendant. Ayzenberg relied upon the financial statements Defendant presented him. Ayzenberg's engagement letter to Defendant made clear he did not audit or review the veracity of Klein's financial statements prior to generating his analysis of Defendant's financial condition. The Report listed Defendant's cash on hand as of December 11, 2017 in the amount of $105,000, FFE & Art valued at $2,147,000, Primary Residence of 131 Pecksland Road Greenwich, Connecticut valued at $10,000,000, 10 Mayfair Lane, Greenwich, Connecticut valued at $4,250,000, 1285 N Lower Ridge Road, Jackson, Wyoming valued at $12,300,000 totaling his assets to $28,802,000. Defendant Klein's liabilities were Citibank loan (Mayfair Lane) in the amount of $680,000, Bank of America loan (Pecksland Road) in the amount of $5,200,000 and Bank of Jackson Hole (N Lower Ridge Road) in the amount of $6,000,000 totaling $11,880,000. (*See* Daniel Ayzenberg CPA Report, Exhibit 2). The financial statements were inaccurate, and therefore, the Compilation Report has no basis in reality.

52.     Upon parsing through HLC's complaint, Plaintiff Bickelmann realized Defendant Klein had been sanctioned by the Chancery Court of the State of Delaware for stealing $178,000 from the account of a business owned 50/50 by Defendant and another person in violation of a court order. (*See HC Danbury LLC v. LJA (Danbury), LLC*, C.A. No. 2855-VCS (Del. Ch.) Exhibit 3; *see also* Ex. 1).

53.     On April 25, 2019, the Commissioner of the Connecticut Department of Banking filed a Complaint pursuant to Chapter 672a of the Connecticut General Statutes, the Connecticut Uniform Securities Act ("CUSA") against Defendants Klein and his company, Visual Group LLC. The CUSA authorized the Commissioner to conduct an investigation to determine whether any person has violated or is violating any provision of sections 36b-2 to 36b-34[3]. The Commissioner may administer oaths, affirmations, subpoena witnesses, compel attendance take evidence and require the production of documents.[4]

54.     CUSA expressly provides that, "[i]n case of contumacy by, or refusal to obey a subpoena issued to, any person, the superior court for the judicial district of Hartford, upon application by the commissioner, may issue to the person an order requiring him to appear before commissioner, or the officer designated by him there to produce the documentary evidence if so ordered or to give evidence concerning the matter under investigation in question. Failure to obey the order of the court may be punished by the court as a contempt of court."[5]

55.     Defendants Klein and Visual Group LLC are the subjects of an investigation under CUSA. On November 7, 2018, the Department began an investigation of the activities of Defendants Klein and Visual Group LLC under the authority of Chapter 672a of the Connecticut General Statutes, the Connecticut Uniform Securities Act.

---

[3] Conn. Gen. Stat. § 36b-26(a).
[4] *Id.* § 36b-26(b).
[5] *Id.* § 36b-26(c).

56.    On November 27, 2018, pursuant to Conn. Gen. Stat. § 36b-26(b), the Commissioner issued both Defendants subpoenas commanding (a) the production of records and documents no later than December 19, 2018; and (2) the appearance and testimony of Klein and the custodian of records of Visual Group LLC on December 19, 2018.

57.    On November 29, 2018, State Marshal Joseph Homelson properly served the subpoenas on said Defendants. On December 8, 2018, State Marshal Michael Delli Carpini served the subpoenas on the Defendants by personally notifying the Defendants of such service and by leaving true and attested copies of the subpoenas at Klein's residence at 131 Pecksland Road, Greenwich, Connecticut. Defendant Klein made numerous statements to State Marshal Carpini that due to his Jewish faith, it was prejudicial to him and exhibited bias towards the Jewish faith – particularly given the presence of holocaust survivors in his household to receive service at his residence during Chanukah. Defendant Klein refused to identify himself and was identified from a photo made during a recent arrest. Several attempts were made to serve Defendant Klein who appeared to evade service during the previous attempts.

58.    By January 29, 2019, the Defendants had neither produced documents to the subpoenas, nor appeared to provide testimony to the Department. Due to Defendants' refusal to comply with the subpoenas, the Commissioner of Banking referred this matter to the Office of the Attorney General for Enforcement.

59.     Thereafter, the Department notified Defendants' counsel Joseph Martini, Esq. that the Department would continue the appearance of the Defendants until February 7, 2019. On February 7, 2019, the Defendants did not, in fact, appear at the Department's offices to testify or produce records.

60.     On April 25, 2019, the Commissioner requested an order enforcing immediate compliance with the November 27, 2018 subpoena duces tecums issued to Defendants Klein and Visual Group LLC as well as requiring Defendant Klein to appear before the Commissioner or his designee to produce documentary evidence and testimony.

61.     Upon gaining the above knowledge of Defendant Klein's past fraudulent endeavors and ongoing litigious background, at that time Plaintiff Bickelmann became confident she was being defrauded as well. Defendant Klein, now an Emperor with no clothes, no longer appeared as glamorous as he had during his previous poolside investment pitches to Plaintiff.

62.     Defendant Klein's statements were largely false, and were intended to instill in Plaintiff a picture of her investments that were untrue. In fact, Defendant Klein was subjecting Plaintiff to a campaign of lies and deceit to paint a false picture of himself. As detailed above, he was successful in doing so, and used his influence over her and exerted pressure to extract investments from her.

63.     At no time did Klein provide Plaintiff Bickelmann with a prospectus.

64.     In soliciting her investments, Defendant Klein actively discouraged Plaintiff Bickelmann from consulting with any financial advisor, lawyer or accountant. In fact, Defendant Klein strongly recommended if she were to have any lawyers or accountants offer advice, to strictly use his own.

65.     Defendant Klein never had an intention to perform the financial promises he had made to Plaintiffs.

66.     Despite Plaintiffs' requests for Defendant Klein to return her investments, which he personally guaranteed and upon which Plaintiff relied and invested her lifesavings, Defendant Klein refused. Instead, Defendant ignored Plaintiff Bickelmann's correspondence to retrieve her money.

67.     On January 6, 2019, Defendant Klein text messaged Plaintiff stating, "Hi Jenna, I hope this new year is off to a good start for you. I will get this resolved shortly. Are the texts not going through?" Plaintiff responded, "Your texts are getting received. I'm listening…." Defendant did not continue texting.

68.     By engaging in the conduct alleged in the Complaint, Defendants violated Section 12 of the Securities Act of 1933, 15 U.S.C. § 78l, and of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, thereunder 17 C.F.R. § 240.10b-5, aiding and abetting under Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e) as well as New York common law for fraud in the inducement and misrepresentation, for breach of fiduciary duty and aiding and abetting.

### FIRST CLAIM FOR RELIEF
#### For Violations of Section 12 of the Securities Act of 1933 as Against Defendants Klein, Visual, Etourdissant, Gary and Tesei

69.     Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 69, inclusive, as if fully set forth herein.

70.     As hereinabove more fully alleged, in connection with the sale of mortgage notes secured by real estate to Plaintiffs, Defendants made misrepresentations of fact.

71.     By reason of the foregoing, Defendants Klein, Visual, Etourdissant, Gary and Tesei violated Section 12 of the Securities Act of 1933.

72.     Plaintiffs are required to recover therefor from such Defendants, jointly and severally, the principal sum of Two Hundred Fifty Thousand and Ten ($250,010.00) Dollars, together with applicable prejudgment interest, attorneys' fees as provided by applicable law and the costs and disbursements of this action.

### SECOND CLAIM FOR RELIEF
#### For Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder as Against Defendants Klein, Visual and Etourdissant

73.     Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 72, inclusive, as if fully set forth herein.

74.     Defendants Klein, Visual and Etourdissant, directly or indirectly, by the use of means and instrumentalities of interstate commerce, employed devices, schemes and artifices to defraud Plaintiffs; made the numerous untrue statements of material fact described in this complaint; and omitted to state material facts necessary in order to make the statements they did make, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which

operated as a fraud or deceit upon Plaintiffs, in connection with the sale and purchase of securities.

75.     Defendants Klein, Visual and Etourdissant with scienter, by the use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, directly or indirectly:

>     (a)     employed devices, schemes, or artifices to defraud;

>     (b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

>     (c)     engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon any person.

76.     By reason of the actions alleged herein, Defendants Klein, Visual and Etourdissant violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

77. Plaintiffs are entitled to recover from such Defendants, jointly and severally the principal sum of Two Hundred Fifty Thousand and Ten ($250,010.00) Dollars, together with applicable prejudgment interest, attorneys' fees as provided by applicable law, and the costs and disbursements of this action.

### THIRD CAUSE OF ACTION
#### For Violation of 20(e) of the Exchange Act, 15 U.S.C. § 78t(e) as Against Defendants Gary and Tesei

78.      Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 77, inclusive, as if fully set forth herein.

79.      Defendants Gary and Tesei knowingly or recklessly provided substantial assistance to Defendant Klein in marketing the sale of fraudulent mortgage notes to Plaintiffs in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

80.      By reasons foregoing, Section 20(e) of the Exchange Act, 15, U.S.C. § 78t(e), deems each of the Defendants to be in violation of Section 10(b) of the Exchange Act and Rule 10b-5 to the same extent as the others to whom such assistance was provided.

81.      Plaintiffs are entitled to recover from Defendants, jointly and severally, the principal sum of Two Hundred Fifty Thousand and Ten ($250,010.00) Dollars, together with applicable prejudgment interest, attorneys' fees as provided by applicable law, and the costs and disbursements of this action.

### FOURTH CLAIM FOR RELIEF
#### For Common Law Fraud in the Inducement and Misrepresentation as Against Defendants Klein, Visual, Etourdissant, Gary and Tesei

82.      Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 81, inclusive, as if fully set forth herein.

83.      The statements of material fact may be Defendants Klein, Visual, Etourdissant, Gary and Tesei to induce Plaintiffs to purchase securities from Defendants were knowingly false when made, and were made to induce Plaintiffs to rely thereon.

84.    Plaintiffs did rely thereon, and were injured by their reliance as foresaid.

85.    As a result, Plaintiffs are entitled to recover from Defendants, jointly and severally, the principal sum of Two Hundred Fifty Thousand and Ten ($250,010.00) Dollars, together with applicable prejudgment interest, attorneys' fees as provided by applicable law, and the costs and disbursements of this action.

### FIFTH CLAIM FOR RELIEF
**For Breach of Fiduciary Duty as Against Defendant Klein**

86.    Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 85, inclusive, as if fully set forth herein.

87.    Defendant Klein was and is a fiduciary of Plaintiff Bickelmann.

88.    In doing the acts and making the omissions described in this complaint, Defendant Klein breached fiduciary duties of loyalty, disclosure, fairness and care.

89.    As a result, Plaintiffs are entitled to recover from Defendants, jointly and severally, the principal sum of Two Hundred Fifty Thousand and Ten ($250,010.00) Dollars, together with applicable prejudgment interest, attorneys' fees as provided by applicable law, and the costs and disbursements of this action.

### SIXTH CLAIM FOR RELIEF
**For Aiding and Abetting Breach of Fiduciary Duty as
Against Defendants Gary and Tesei**

90.    Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 91, inclusive, as if fully set forth herein.

91.    Defendants Gary and Tesei, as the attorney handling the matter, knew Defendant Klein was encumbered in a foreclosure proceeding. Defendants knew the documents sent to Plaintiff Bickelmann as proof of her investment in distressed debt

relating to real property with Defendant Klein were fraudulent, misleading and merely proof of Defendant Klein's property foreclosure.

92.     Defendants breached a duty of loyalty to Plaintiffs by offering fraudulent proof of Plaintiffs' investment with Defendant Klein.

93.     Defendants participated in and aided and abetted Defendant Klein's breach of duty by allowing Defendant Klein to deceive Plaintiffs with foreclosure proceeding documents unrelated to Plaintiffs' investment.

94.     Defendants knew that he was participating in Defendant Klein's breach of duty.

95.     Plaintiffs have been harmed as a direct result of Defendants' disloyal conduct.

96.     As a result, Plaintiffs are entitled to recover from Defendants, jointly and severally, the principal sum of Two Hundred Fifty Thousand and Ten ($250,010.00) Dollars, together with applicable prejudgment interest, attorneys' fees as provided by applicable law, and the costs and disbursements of this action.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in the principal,

sum of Two Hundred Fifty Thousand and Ten ($250,010.00) Dollars, together with

applicable prejudgment interest, attorneys' fees as provided by applicable law, and the

costs and disbursements of this action, punitive damages, and such other relief as the

Court may deem just and proper in the circumstances.

Dated:  May 21, 2019                                    Respectfully submitted,


                                                        S/ Patrick Ryan Morris, Esq.
                                                        The Law Office of Patrick Ryan
                                                        Morris, Esq. LLP
                                                        135 Madison Ave, Fl 7, Suite 110
                                                        New York, New York 10016
                                                        Tel: (917) 539-8739
                                                        prm@patrickmorrislaw.com